WHITE v. BENDER et al.

(Circuit Court, N. D. New York. April 12, 1911.)

**1.** Copyrights (§ 57*)—Infringement.

A law book author may copy the citation of a prior author, if he examines and verifies the cases cited, and may use them in the same order, and with additions or subtractions.

[Ed. Note.—For other cases, see Copyrights, Dec. Dig. § 57.*]

**2.** Copyrights (§ 83*)—Infringement—Evidence.

Failure of a law book author, whose citations are the same as a prior author's, to cite other existing cases on the same points, is evidence of copying, as is his omission to note overruling or reversal of cases cited by both, or to correct errors appearing in the prior author's citations.

[Ed. Note.—For other cases, see Copyrights, Dec. Dig. § 83.*]

**3.** Copyrights (§ 57*)—Indexes—Infringement.

Whether an author of a book may use the form and wording of a prior index depends upon circumstances and the contents of the two books.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 53; Dec. Dig. § 57.*]

**4.** Copyrights (§ 85*)—Preliminary Injunction—Infringement.

A law book publisher will not be temporarily enjoined as for infringement of a copyright, where it does not appear with certainty that so much has been taken from the prior book that its value is materially diminished, or that the later book will supersede the other through infringement, and where the publisher is responsible.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 78; Dec. Dig. § 85.*

Infringement by use of extracts and quotations, see note to G. & C. Merriam Co. v. United Dictionary Co., 76 C. C. A. 475.]

In Equity. Suit by Frank White against Matthew Bender and others, trading as Matthew Bender & Co. On motion for a preliminary injunction. Motion denied.

Frank L. Crawford, for complainant.

Frost & Nieman, for defendants.

RAY, District Judge. In 1907 Frank White published the sixth edition of his work, "White on Corporations," with statutes, decisions, annotations, and forms; Baker, Voorhis & Co., publishers. Same was duly copyrighted. In 1909 the defendant company published and put on the market "Frost on New York Corporations," treatise, annotations, corporation acts, and forms, by Thomas Gold Frost. This purports to be "a treatise on the Business Corporation Law of the state of New York, including therein," etc. Both works contain the New York statutes relating to corporations—that of Frost coming down to August, 1909; that of White to January 1, 1907. The alleged infringing matter consists mainly of (1) citations of cases; (2) indexes; (3) legal forms; and (4) some miscellaneous matter.

### Citations.

In citing cases under the various sections, White gives the law student, lawyer, or judge using his book some idea of the point decided

---

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and arising under the section to which the decision relates. Thus in White, page 115 (Stock Corporation Law as then in force), "Sec. 27, Officers," he first gives the statute as amended in 1892, referring to the former section; then a note referring to other sections, etc., and then proceeds, "One person may be chosen to fill two different offices (Novelty Mfg. Co. v. Connell, 88 Hun, 254)," and then gives the point of other cases arising, or supposed to have arisen, under this section, with a reference to the case where the point is decided.

Frost, page 575, gives the section on "Officers" as "Sec. 30, Officers," quotes the statute, says, "Formerly Sec. 27, S. C. L.," and then cites a large number of cases, the same cases in the same order cited by White under the same section, before amendment, with three or four omissions. He in no way indicates the point or points of the cases cited, and the user of the book would probably lay it aside and turn to a digest for such information as he desires. There is nothing in the citations to indicate whether or not the cases apply to the section as amended. This runs all through Part II of the book complained of. In some cases the citation of another case has been added, and in most cases errors appearing in White appear in Frost. This is persuasive evidence that the citation of cases was copied from White, and that there was no examination and verification of the cases by Frost. Frost admits he had those cases copied for use in compiling his book, but says, in substance, he examined all carefully, and discovered some, and added hundreds of new cases, and that he directed his assistant to correct all of them in spelling, etc. He gives quite an extended explanation as to these citations. His assistant gives an affidavit in corroboration.

### Index.

It is quite true that, where a work consists mostly of statutes and a mere recital of what has been decided by the courts under them, there is little room or opportunity for original thought or reasoning and little disposition to indulge therein. Most modern text-books are written in this way. We take up a new book just issued, and find a rehash of what has gone before, with references to the old cases and some of the new ones. The text usually reads, It has been or was decided in (giving case) that, etc., and in (giving case) that, etc., but in (giving case) it was held, and so on, page after page. There is nothing to indicate at what page the law on a given point can be found, unless we turn to the index. These are usually very meager, with little or no cross-indexing, but so far as they indicate anything they usually follow a beaten track.

There is considerable inherent evidence that Frost copied, with few additions, much of the index of White. For instance, in General Index of White, under the head "Business," he has "extension of," "form for," "location of, change of," and "taxable, at principal place of." In preparing his index, White evidently found the section of the statute (Laws 1896, c. 929, amended by Laws 1905, c. 489) headed "Change of Place of Business," and the section headed "Alterations or Extension of Business" (Laws 1892, c. 688, amended by

Laws 1901, c. 354, and Laws 1905, c. 751). These headings, as well as the text, would suggest, under the title "Business" in the index, "place of," "change of place of," "location of place of," "alteration of," "extension of," "change of," etc. In White's index the words "location of, change of," refer us to page 180. The section found there refers wholly to location and change of place of business, and not to alterations and extensions of business or changes or alterations in the character of the business. Now "location of business" and "change of business" are not the same as "location of place of business" or "change of place of business." White's index, "Business," subhead "extension of," refers us to page 131, where we find section 32, headed "Alterations or Extension of Business." Here, of course, we cannot indulge in criticism.

It is not to be wondered at, of course, that White assumed the reader of his book would understand that "location of, change of," referred, not to the location of the business itself or an alteration of the business itself, but to the place of managing it, the principal office. Probably that ran in his mind in making up his index. But would another writer make the same assumption, or would he be likely to say, referring to the section that treats wholly and solely of the "place of business," and its location and changes of the place of business from one locality to another, under the head "Business," "place of," or "location of place of," and "change of place of"?

Again, there is much to indicate that, while using and referring to White's general index, Frost did not follow it, only as a guide, using generally the same expression for want of better. White has many things Frost does not have, and Frost has many things wanting in White.

## Legal Forms.

Frost has a considerable number of legal forms substantially identical with those found in White. Whether he took these from public records or forms used prior to White, or copied forms original with White, is in dispute. The truth of the dispute in this regard, as well as the matter of citations, can hardly be arrived at satisfactorily on mere affidavits, where there has been no cross-examination.

## General Matter.

It cannot be doubted that Frost has either copied from White, or correctly quoted from him from memory, in several instances. The work of Mr. Frost is divided into three parts. Part I is in the nature of a general treatise on the Business Corporation Law of New York; Part II deals with General Corporation Law; and Part III with forms and precedents. In Part I, page 133, I find:

"When stock is declared forfeited, the liability of the holder thereof to the corporation for further payment thereon ceases.[4]"

The figure refers to a footnote, viz.:

"[4] Mills v. Stewart, 41 N. Y. 389; Small v. Herkimer Mfg. Co., 2 N. Y. 330."

In White's book, page 151, under "Sec. 43, Time payment of subscriptions to stock" (giving the section and referring to several cases), I find:

"When stock is declared forfeited, the liability of the holder thereof to the corporation for further payment thereon ceases. (Mills v. Stewart, 41 N. Y. 380; Small v. Herkimer Mfg. Co., 2 N. Y. 330.)"

The language is precisely the same in both books, as are the citations. White claims this was copied from his book. There are several other cases on substantially the same question, not cited by either White or Frost. I do not find the language quoted in either the syllabus or the text of any case, and assume that White formulated the statement. The language nearest to it is found in Mills v. Stewart, supra, 41 N. Y. 389, where the court, per Grover, J., said:

"The respondent's stock having been forfeited, his liability to the company for further payment thereon ceased. Small v. Herkimer Man. Co., 2 Comst. 330."

The point was decided in the last-mentioned case, but not in Mills v. Stewart, where the question decided was that:

"One whose shares of stock in a railroad corporation have been forfeited by the company for nonpayment of calls is not a stockholder within the meaning of the tenth section of the general railroad act of 1850 [Laws 1850, c. 140], so as to render him liable to a creditor of the company for the amount unpaid on the forfeited stock, although the debt was contracted by the company before the stock was forfeited."

In Small v. Herkimer Mfg. Co., supra, the point decided was that:

"After a corporation, pursuant to a provision in its charter, has forfeited the stock of a subscriber for nonpayment of an installment due upon his subscription, it cannot maintain an action to recover any part of such subscription."

The Small Case decides the point stated in White, while the Mills Case recites it merely as a basis for a decision against liability to a creditor of the corporation. I think it plain that Frost copied White, without examining the cases cited.

In White we find the following, page 170, under the section relating to "Financial Statement of Stockholders":

"When a proper demand for a financial statement has been made, but the corporation has been dissolved before the expiration of the thirty days, no statement need be made, as a defunct corporation no longer has a treasurer and cannot through him or through any one be called upon to render such a statement. (Osborne v. Gilliams, 33 Misc. 312; McCrea v. Bedell, 9 Misc. 372.)"

In Frost we find this exact language with the citations in a footnote. The places where the cases are found in the New York Supplement are added. Evidently White formulated this statement from the case of Osborne v. Gilliams, and Frost copied it without giving White credit. In both instances referred to, it required brain work to make a condensed statement of the principle decided in the case. In neither case is the language found in White a substantial reproduction of the syllabus of the case or cases cited, or of any part of it, or of any language found in the opinion standing together.

How often and how much of the original composition found in a copyrighted law book may the author of a subsequent work on the same subject copy without being guilty of infringement of such copyright? I have pointed two of several instances of copying. There are instances when the substance is copied, but slight changes have been made.

[1] I think it well decided that a subsequent author may use and copy the citations of a prior author, provided he examines and verifies such cases before using them. He may use them in the same order as did his predecessor. He may use them all, or add to or subtract from. The question is: Does he do original work or merely copy?

[2] If other cases have been decided on the same points, and the later writer does not give them, it is persuasive evidence of copying. If a case has been overruled or reversed, or if an error appears in the citation, and the fact that the case has been overruled or reversed is not noted, or the error is not corrected, this, too, is evidence of mere copying.

[3] As to indexes, the particular form and wording of a prior index may or may not be used, depending on circumstances and the contents of the books. Both authors (in a book relating to corporations) would naturally use the words, "Business, place of, organization, change of, change of place of;" "Directors," and, as subheads, qualifications, duties, resignation, liability, etc. We would expect much duplication, inasmuch as the words are used in the statutes, and must or should be arranged in alphabetical order. But all this does not permit mere copying, assuming we have originality in the first author.

[4] Now the general style and make-up of the two books is quite different. White takes the sections one by one, quoting each, and under it states the substance of the decisions applicable and refers to the report where the cases are found. Frost, as stated, treats the various corporations and subjects relating thereto generally in Part I, and cites the cases supporting the text in footnotes, and then in Part II takes the sections, one by one, and cites a large number of cases under each, without indicating what they or either of them holds. The one book is not a copy of the other, nor is a large quantity of original matter copied from the one into the other. As the case looks now, certain parts of Frost ought to be suppressed as an infringement, but the greater part of Frost appears to be a legitimate original work. On the whole, I do not think I am sufficiently possessed of the truth to apply the rigors of a preliminary injunction at this time.

I am unable to determine anything satisfactorily as to the forms, except that quite a number are alike. I cannot say as a fact, on these affidavits, the ones in question were originally prepared by White. I am not satisfied as to the use Frost made of White's index. I am satisfied Frost copied into his book certain matter composed by White, but to what extent I cannot say on the present showing. To now enjoin certain parts would be unwise, as it may appear that would be an error, and on a final hearing of the case the injunction, if granted, may apply to other matter.

On the whole, I think the parties should proceed with diligence to take the testimony and submit the case on final hearing. Clearly no one will purchase Frost, assuming it to be White. Has so much been taken from White by Frost that the value of White's book is sensibly diminished, or are the labors of White substantially to an injurious extent appropriated by Frost? Will Frost to any extent supersede White by reason of the matters complained of?

I am not prepared on these affidavits to answer intelligently. I cannot say with certainty the case is within Perris v. Hexamer, 99 U. S. 674, 25 L. Ed. 308, or Callaghan v. Myers, 128 U. S. 617, 9 Sup. Ct. 177, 32 L. Ed. 547, on the evidence before me.

I think defendants responsible, and that injunction can be delayed, if the complainant is entitled thereto on all the proofs when in, without material injury to him.

Motion for preliminary injunction denied.